UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

QAREEB HAYDEN, et. al.,        )
                              )
    Plaintiffs,         )
                              )        Civil Case No.
v.                            )        5:13-cv-120-JMH
                              )
GR SPRING & STAMPING, INC.,   )        **MEMORANDUM OPINION & ORDER**
                              )
    Defendant.          )
                              )

\*\*\*

This matter is before the court on Defendant's motion to dismiss Plaintiff Johnetta Williams as a Plaintiff in this action. [D.E. 7]. Plaintiff has responded [D.E. 9], and Defendant has replied [D.E. 10]. Thus, this motion is now ripe for review. For the reasons which follow, Defendant's motion [D.E. 7] will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Johnetta Williams was a temporary employee at Defendant's Berea, Kentucky, facility from October to November 2011. [D.E. 1-5 at 5]. In the Amended Complaint, Plaintiff alleges that she suffered from repeated racial harassment from her coworkers at Defendant's facility, which she claims was ignored by her supervisors. [D.E. 1-5 at 5]. After leaving work on November 3, 2011, to find her car vandalized, Plaintiff claims that she felt unsafe at

work and quit her job at Defendant's facility.   [D.E. 1-5 at 5—6].

On July 24, 2012, Williams filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Kentucky.   [D.E. 9 at 1].   In the required schedules and disclosures, Williams did not disclose a potential claim against Defendant GR Spring & Stamping as an asset, a fact that she admits in her response.   [D.E. 9 at 1].   In fact, Williams failed to disclose her claim despite specific instructions in the schedules that she must "list all personal property of the debtor of whatever kind," and list "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." [D.E. 7-2 at 10—11].   Williams was represented by counsel during her bankruptcy proceedings.   Williams also signed the "Declaration Concerning Debtor's Schedules," in which she declared "under penalty of perjury that I have read the foregoing summary and schedules, consisting of 19 sheets, and that they are true and correct to the best of my knowledge, information and belief." [D.E. 7-2 at 28].

On August 21, 2012, the United States Bankruptcy Trustee filed the "Chapter 7 Trustee's Report of No Distribution" and reported that, after he reviewed the

2

information in the schedules, there was no property available for distribution from the estate over and above that exempted by law. [D.E. 7-3 at 3]. In reliance on the trustee's report, the bankruptcy court discharged Williams on October 22, 2012. [D.E. 7-4].

The present action, alleging employment discrimination in violation of the Kentucky Civil Rights Act, was filed on March 27, 2013, and Plaintiff Williams was added to the lawsuit as a party in the Amended Complaint on April 23, 2013. [D.E. 1-1; 1-5]. Defendant timely removed the action to this court on April 30, 2013, on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Because Plaintiff did not disclose her potential employment discrimination claim in her bankruptcy schedules, Defendant filed this motion to dismiss Plaintiff as a party pursuant to judicial estoppel. Simultaneous with her response to Defendant's motion to dismiss, Plaintiff amended her bankruptcy schedules to add her claim against Defendant as an asset. [D.E. 9-1].

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. The court views the complaint in the light most favorable to the plaintiff and must accept as true all

3

well-pleaded factual allegations contained within it.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" *Id.*
(citing *Bell Atlantic Corp.*, 550 U.S. at 570).

## III. DISCUSSION

"Where a party assumes a certain position in a legal
proceeding, and succeeds in maintaining that position, he
may not thereafter, simply because his interests have
changed, assume a contrary position." *New Hampshire v.
Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*,
156 U.S. 680, 689 (1895)) (internal quotation marks and
alterations omitted). "This rule, known as judicial
estoppel, 'generally prevents a party from prevailing in
one phase of a case on an argument and then relying on a
contradictory argument to prevail in another phase.'" *Id.*
(quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).

In *White v. Windham Vacation Ownership, Inc.*, 617 F.3d
472 (6th Cir. 2010), the Sixth Circuit outlined the factors
that must be analyzed when applying the doctrine of
judicial estoppel to the bankruptcy context. *White*, 617
F.3d at 478. Specifically, the court noted the following:

4

> In short, to support a finding of judicial estoppel,
> we must find that: (1) [the plaintiff] assumed a
> position that was contrary to the one that she
> asserted under oath in the bankruptcy proceedings;
> (2) the bankruptcy court adopted the contrary
> position either as a preliminary matter or as part of
> a final disposition; and (3) [the plaintiff's]
> omission did not result from mistake or inadvertence.
> In determining whether [the plaintiff's] conduct
> resulted from mistake or inadvertence, this court
> considers whether: (1) she lacked knowledge of the
> factual basis of the undisclosed claims; (2) she had
> a motive for concealment; and (3) the evidence
> indicates an absence of bad faith. In determining
> whether there was an absence of bad faith, we will
> look, in particular, at [the plaintiff's] "attempts"
> to advise the bankruptcy court of her omitted claim.

*Id.*

Notably, the facts of *White* are very similar to those in this case, since the plaintiff in *White* also failed to disclose her employment discrimination lawsuit in her bankruptcy petition, even though she had been issued a Notice of Right to Sue from the EEOC a month prior to filing her bankruptcy petition. *Id.* at 474. The plaintiff in *White* amended her bankruptcy schedules after the Defendant filed its motion to dismiss her as a party on the basis of judicial estoppel. *Id.* at 475. However, the Sixth Circuit panel refused to approve the "gamesmanship" of allowing a plaintiff to avoid the application of judicial estoppel by amending bankruptcy schedules only after the defendant catches them and files a motion to dismiss. *Id.* at 480. Thus, after examining the above

factors, the Sixth Circuit applied the doctrine of judicial estoppel to bar the plaintiff's claims. *Id.*

Similarly, when each of the judicial estoppel factors are examined in this case, particularly in light of *White*, it becomes apparent that Williams is also judicially estopped from asserting her claims against Defendant in this action. The first two factors have clearly been met, as there is no question that Williams assumes a position in this lawsuit that is contrary to the one she previously asserted in her bankruptcy proceedings, and that the bankruptcy court adopted her contrary position. Specifically, by pursuing her employment discrimination claim against Defendant, she is taking a position that is "without question 'contrary to' her sworn bankruptcy petition," since "pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." *Lewis v. Weyerhaeuser Co.*, 141 Fed. App'x. 420, 425 (6th Cir. 2005); *see also White*, 617 F.3d at 479 (the "omission, which essentially stated that the harassment claim did not exist, was contrary to [her] later assertion of the harassment claim before the district court."). Further, the trustee and bankruptcy court relied on that omission to conclude that Williams had no assets over and

6

above that exempted by law.    [D.E. 7-3 at 3; D.E. 7-4].
This adoption of Williams's contrary position constitutes
"sufficient judicial acceptance" to estop her from
advancing an inconsistent position in this case. *White*,
617 F.3d at 789 (quoting *Lewis*, 141 Fed. App'x at 425)
(internal quotation marks omitted).

    As is typically the situation in these cases, the
issue of whether judicial estoppel should apply rests on
the third factor, whether Williams's omission resulted from
mistake or inadvertence. *Id.* at 478.   Defendant points
out, and Williams agrees, that she had knowledge of the
facts giving rise to her potential claims against Defendant
prior to filing for bankruptcy, since her employment with
Defendant ended roughly eight months before she filed for
bankruptcy.   [D.E. 7 at 8—9; D.E. 1-5 at 5—6].   Further,
Williams certainly "had a motive for concealment: if the
harassment claim became a part of her bankruptcy estate,
then the proceeds from it could go towards paying [her]
creditors, rather than simply to [herself]." *White*, 617
F.3d at 479 (citing *Lewis*, 141 Fed. App'x. at 426) ("It is
always in a Chapter 13 petitioner's interest to minimize
income and assets.").

    Thus, the true controversy comes down to whether
Williams acted in bad faith when she omitted the claim from

her bankruptcy schedules, a burden that rests on Williams. *White*, 416 F.3d at 480.   One of the primary ways that a plaintiff can show an absence of bad faith is to display her "attempts to correct her initial omission." *Id.; see also Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897—99 (6th Cir. 2004) (examining the plaintiff's attempts to amend the bankruptcy schedules to include the claim at issue when deciding whether the plaintiff acted in bad faith).   However, "since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, . . . efforts to correct an omission that came before the Defendant[] filed [a] motion to dismiss are more important than efforts that came after." *White*, 617 F.3d at 480.

In this case, there is no question that Williams made absolutely no effort, successful or otherwise, to amend her bankruptcy schedules until May 16, 2013, six days after Defendant filed its motion to dismiss her as a party. [D.E. 9-2].   Unfortunately, under Sixth Circuit precedent, this effort is too little, too late.   Indeed, the only factual scenario in which the Sixth Circuit has declined to apply judicial estoppel in the bankruptcy context is when the plaintiff takes repeated "affirmative steps to fully inform the trustee and the bankruptcy court of the action,"

8

such that the trustee and court are "aware of the potential civil claim against Defendant before the bankruptcy action close[s], although the claim was omitted from [the] bankruptcy schedule form." *Lewis*, 141 Fed. App'x. at 426; *Eubanks*, 385 F.3d at 898.   This is, upon Williams's own admission, not the situation in this case, since her amendment on May 16, 2013, was her first attempt at correcting her omission.  [D.E. 9]; *see also White*, 617 F.3d at 482 ("We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed.   To do so would encourage gamesmanship, since White only fixed her filings after the opposing party pointed out that those filings were inaccurate.").

In response, Williams argues that although she knew about the facts giving rise to her cause of action prior to filing for bankruptcy, she "had not considered legal action at that point in time and was unaware that legal remedies against G&R Stamping were available to her."  [D.E. 9 at 1].  She also states that she did not "realize that [she] needed to list this matter on [her] bankruptcy filing" [D.E. 9 at 3], and explains that "[u]pon learning of the inconsistent filing, [she] immediately instructed her bankruptcy counsel to amend her filings to list this asset."  [D.E. 9 at 1].  These arguments are unavailing.

9

First, the instructions on the schedules were clear that she was to list any claim of any nature, and Williams personally signed the schedules, swearing under penalty of perjury that the filing was accurate. [D.E. 7-2 at 28]. Williams's self-serving statement that she had not considered any legal action at the time of the bankruptcy filing is insufficient evidence to meet her burden to show an absence of bad faith. Undoubtedly, if a simple statement such as this were sufficient, it would render the *White* opinion largely irrelevant, since a large portion of the opinion is dedicated to discouraging the "gamesmanship" that arises when a plaintiff fixes her bankruptcy filings only after the omission is challenged by her adversary. *White*, 617 F.3d at 476; 480; 481. Further, Williams's statement that she amended her schedules as soon as she became aware of the inconsistency is questionable, since she was aware of the facts giving rise to her claim months before the bankruptcy filing and joined this action as a plaintiff three weeks prior to her amendment. Regardless, under *White*, the court is not inclined to favorably consider Williams's amendment that was filed after Defendant's motion to dismiss. *Id.* at 482.

In short, Williams has not met her burden to show an absence of bad faith on her behalf. Accordingly,

10

application of judicial estoppel is appropriate, and Williams is estopped from being a plaintiff in this action.

CONCLUSION

For the reasons stated above, **IT IS ORDERED**:

1) that Defendant's Partial Motion to Dismiss [D.E. 7] is **GRANTED**;

2) that Plaintiff Johnetta Williams is hereby **DISMISSED AS A PARTY.**

This the 30th day of May, 2013.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge